## THE INHABITANTS OF THE CITY OF BURLINGTON v. CHARLES G. ESTLOW.

1. An appointment to, and acceptance of, a municipal office does not constitute such a contract as will obstruct a vacation of the office.
2. An ordinance which occupies the entire field of a former one, will, as a general rule, repeal such former one by implication.

On error to the Burlington Circuit.

Suit by a policeman for an installment of his salary.

The plaintiff was appointed one of the policemen of Burlington by the mayor, under an ordinance entitled " An ordinance regulating the police of the city of Burlington," passed May 4th, 1875. On the 6th of May, 1879, the common council passed another ordinance entitled " An ordinance to establish and regulate a city police." This by-law gave

the appointing power to the city council, who acted under it, and made the requisite appointments.

The case came up on writ of error and bill of exceptions.

Argued at November Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the plaintiff in error, A. *Flanders* and *James Wilson*.

For the defendant, *M. R. Sooy* and *C. E. Hendrickson*.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   The decision in this case depends altogether on the fact whether the city ordinance of the 6th of May, 1879, operated as a repeal of the prior ordinance of the 4th of May, 1875.   It was under this latter ordinance that the plaintiff was appointed to office, and by its terms he held such office during the pleasure of the mayor.   The charter of the city empowered the common council to constitute and organize a police, and the ordinance of 1875 was the product of that authorization.   These were its principal features: it authorized the mayor to appoint four citizens to act as policemen, at the will and pleasure of the mayor, and it declared that such policemen "should be recognized as the regular city police," and that each of them should receive an annual salary of $300; and it also gave power to the mayor to appoint special policemen when occasion seemed to call for it.   On the passage of the subsequent ordinance in 1879, the plaintiff was notified that he had been superseded, and that his term of office was ended.   But he insisted that such discharge was invalid, and, accordingly, continued to discharge his supposed duties, and to recover compensation for such services this action has been brought.   The ground by which his counsel attempt to justify this persistence is, that his appointment to office by the mayor and his acceptance of it, constituted a contract between himself and the city, which was invio-

late on both sides. But this is a fallacy which was exploded as long ago as the case of *Mayor, &c., of Hoboken* v. *Gear*, 3 *Dutcher* 265.

But the ground of action principally labored for was this: that the ordinance by authority of which the plaintiff had come into office, still subsisted, the argument being that it had not been repealed by the ordinance of 1879. In this latter by-law there is no express repealer, and the inquiry, therefore, is, whether such destructive effect has not been produced by implication. My comparison of these two ordinances has led me to the conviction that it is plain that the latter one was intended to supersede and take the place of the former one, and that, consequently, the former has been vacated. It is one of the settled rules of construction that a statute is impliedly repealed by a subsequent one, revising the whole subject matter to which the first appertains. This is a principle of familiar application with respect to statutory provisions which are designed to regulate a subject existing at common law. *Sedg. S. & C. Con.* 126. The inquiry in such cases is, whether it was the legislative intention, in enacting the later law, to occupy the whole field embraced by the previous legislation. Applying this test to these two ordinances, it does not seem to me that any rational doubt can arise with respect to the purpose intended, which was to supersede the old police system and establish a new and different one in its stead. In all its parts it repels the idea that it is intended to graft something on a police department already existing. So far is this the case that its title is, "An ordinance to establish and regulate a city police." Similar indications appear in its several provisions; it authorizes the common council to appoint as policemen the same number as the first ordinance directed the mayor to appoint; and it declares that the body thus chosen "shall constitute and be recognized as the regular city police," just as the prior ordinance declared with respect to the police force which it organized. So this last ordinance empowers the council to call in special policemen when necessity required it, thus overriding the power of the mayor to perform such

act.    In short, this ordinance covers every part of the ground occupied by the primary one, and it would be a very forced conclusion to maintain that this common council, by this last act of municipal legislation, intended to establish in this city two discordant police departments.    My deduction is that the latter ordinance repealed, by necessary implication, the former one, and that thus the plaintiff was legislated out of office.

It is proper further to say that neither of these ordinances was properly proved at the trial, and on this account, unless there is some statutory provision that has escaped my attention, the plaintiff should have been non-suited.    The defect in the proofs was this : by section 17 of the charter of 1851, p. 149, an ordinance, in order to become efficacious, is required to be signed by the mayor and clerk, and " published for at least fifteen days before the same shall go into operation," and there was no evidence tending to show any publication of the ordinance in question.    In the case of Mayor, &c., of Hoboken *v.* Gear, already referred to, Chief Justice Green expresses this view, in an apparently similar case, that such publication is a prerequisite to the legal efficacy of the ordinance.    If this provision has not been legislatively abolished, and I cannot find that such is the case, as a matter of course, the ordinance of the council which was produced at the trial, regulating the time when ordinances shall go into effect, is of no force.

Let the judgment be reversed.